IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRENT L. BANKS #342-948
Petitioner :

v. : CIVIL ACTION NO. CCB-09-1319

WCI and :
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND :
Respondents

**MEMORANDUM**

Before the court is a pro se petition for writ of habeas corpus filed by Maryland prisoner Trent L. Banks (Document 1), the State's substantive responses and exhibits filed in connection therewith (Document 7), and Banks's reply concerning procedural default. Document 12.[1] After reviewing these documents, the court finds no need for an evidentiary hearing. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; *see also* 28 U.S.C. § 2254(e)(2). For reasons set forth below, the court denies relief and dismisses the petition with prejudice.

**The Crime**

In the early morning of March 13, 2006, Ebony James drove with her friend Kimberly Horton to 56 Solar Circle in Baltimore County to confront her boyfriend, Trent Banks, whom James believed was with another woman. Document 7-1, Exhibit 2 at 113-15. Banks answered James's knock on the door, refused to come outside, and slammed the door in her face. James slashed all four tires on Banks's new car and turned her car around to leave. *Id.* at 116-19. To exit the area James passed by 56 Solar Circle. Banks was outside and the two of them argued

[1] Banks requests appointment of counsel alleging, without specificity, that his claims must be heard in order to prevent a "miscarriage of justice." Document 13. For reasons set out in the September 22, 2009, Order denying Banks's previous motions for appointment of counsel, this motion also shall be denied.

before Banks returned to the residence. As James drove away shots were fired, shattering the back window of the car. *Id*. at 120-21. Another bullet flattened a tire, and several bullets went through the front and into the hood of the car. James parked at a nearby school and called police, telling them it was Banks who shot at her car. A month later she recanted the statement, claiming she did see the shooter but it was not Banks. *Id*. at 126-30, 146. During cross-examination at trial she stated that she made up the accusations because she was angry with Banks. *Id*. at 140-42.

At trial, passenger Kimberly Horton recited the statement she provided to police the day of the shooting:

> I saw Ebony knock on the door and Trent Banks came to the door and closed it in her face. Ebony slashed his tires and got back into the car. My cell phone dropped. I picked it up. And that's when I heard glass in the car break in the passenger seat at the time.

*Id*. at 159. At James's request, Horton later wrote a statement indicating that she did not see Banks shoot at the car.[2] *Id.* at 160-61. She testified that after the shots were fired, James exclaimed "I can't believe he's doing this." *Id*. at 156, 163.

Daryl Middleton, who was present at 56 Solar Circle prior to and during the shooting, testified at trial that the night of the shooting he told police Banks owned a gun which was kept in a safe. *Id.*, Exhibit 3 at 9-10. Middleton testified at trial that he did not actually know if Banks owned a gun but, if he did, it was a .38 caliber and not a 9-millimeter. *Id*. at 8, 13-14.

Officer Conrad Butler, who took statements from James and Horton after the shooting,

---

[2] Both James and Horton presented letters recanting their original statements to police. The letters were produced at Banks's bail reduction hearing. James also testified at that hearing and again indicated that Banks was not the shooter and she named him because she was angry with him. As a result, Banks was released on his own recognizance pending trial. Document 7-1, Exhibit 2 at 4-6.

described the women as traumatized but cooperative. *Id*. at 174-75. Banks was taken into custody several hours later at the scene of the shooting. *Id*., Exhibit 2 at 174-75. Several spent 9-millimeter shell casings were found at the scene. *Id*. at 169-70 & Exhibit 3 at 27, 62. When questioned by police, Banks stated that he could not be convicted if police could not find the gun. *Id.*, Exhibit 3 at 82.

**<u>Procedural History</u>**

The jury found Banks guilty of attempted second-degree murder, assault, and reckless endangerment of both James and Horton, use of a handgun in the commission of a crime of violence, and malicious destruction of property. Document 7-1, Exhibit 3 at 151-52. On April 16, 2007, Banks was sentenced to thirty-five years incarceration. *Id.*, Exhibit 4 at 31. His direct appeal to the Court of Special Appeals of Maryland was dismissed on August 23, 2007, for noncompliance with the rules of appellate procedure. The mandate issued on September 24, 2007. *Id.*, Exhibit 5. Banks did not seek further review on appeal.

On March 6, 2008, Banks initiated post-conviction proceedings in the Circuit Court for Baltimore County. Id., Exhibits 1 & 9. The petition, as supplemented, alleged that trial counsel was ineffective for failing to: (1) request removal of a sleeping juror; (2) call witnesses to construct an adequate defense; and (3) challenge the sufficiency of the evidence underlying the handgun charge. Banks also alleged his conviction should be overturned due to (4) the cumulative effect of these errors. *Id.*, Exhibits 6-9.

Following a hearing at which Banks, trial counsel, and two other witnesses testified, the post-conviction court denied relief in an opinion dated July 1, 2008. *Id.*, Exhibits 1, 8-9. Banks sought leave to appeal, arguing that trial counsel was ineffective based on the failure to call witnesses to construct an adequate defense. *Id.*, Exhibit 10. On March 6, 2009, the Court of Special Appeals summarily denied leave to appeal by way of an unreported opinion. The mandate issued on April 6, 2009. *Id.*, Exhibit 11.

Banks now raises the following claims in support of his federal habeas corpus petition:[3]

(1) He was denied effective assistance of trial counsel where counsel failed to request removal of a sleeping juror;

(2) Counsel was ineffective for failing to call any defense witnesses; and

(3) Counsel was ineffective for failing to file any motions on his behalf.

**Threshold Considerations**

**Exhaustion of State Remedies**

Under *Rose v. Lundy*, 455 U.S. 509 (1982), those petitioning for federal habeas corpus relief must first exhaust each claim by pursuing remedies available in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. §§ 2254(b)-( c); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal (and thereafter seeking *certiorari* to the Court of Appeals) and with other claims by way of a post-

[3] In his response Banks attempts to add additional claims concerning ineffective assistance of trial, appellate, and post-conviction counsel. The new claims against trial and appellate counsel were not presented to the Circuit Court on post-conviction. They are procedurally defaulted and, for reasons set forth in this opinion, cannot be addressed on the merits by way of federal habeas corpus review at the eleventh hour. Ineffective assistance of post-conviction counsel is not a cognizable ground for federal habeas corpus relief. *See* 28 U.S.C. §2254(i); *Coleman v. Thompson*, 501 U.S. 722, 755-57 (1991); *Mackall v. Angelone*, 131 F.3d 442, 446-51(4th Cir. 1997) (*en banc*).

conviction petition, followed by petitioning the Court of Special Appeals for leave to appeal. Banks no longer has any state direct review or collateral review remedies available to him with respect to the claims raised in this court. Thus, his claims will be considered exhausted for the purpose of federal habeas corpus review.

**Timeliness**

Respondents do not contend - and the record does not show - that Banks's petition is time-barred.

**Procedural Default**

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U. S. 478, 493 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram,* 409 U. S. 41, 46 (1972) (failure to raise claim during post conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). Thus, claims which have never been presented in the state courts--or claims which were not exhausted properly in the state courts–will not be examined on the merits if review of the claims in state court would be barred by state procedural rules. *See Johnson v. Maryland*, 915 F.2d 892, 895 (4th Cir. 1990).

The bar, however, is not absolute. In *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), the Supreme Court held that consideration of a claim in a petition for habeas corpus can be barred by failure to comply with state procedural rules, unless the petitioner makes a showing of cause for the failure and prejudice resulting from the failure. *See also Murray*, 477 U.S. at 496-97; *Engle*

*v. Isaac*, 456 U.S. 107, 129 (1982).

Even if a petitioner cannot show cause and prejudice to excuse procedural default, a court must still consider whether it should reach the merits of the petitioner's claims. To that end, in an effort to "balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), the Supreme Court has recognized a miscarriage-of-justice exception. Thus, in appropriate cases, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' " *House v. Bell*, 547 U.S. 518, 536 (2006), citing *Murray, supra*, at 495 (quoting *Engle*, supra, at 135). This miscarriage of justice standard is directly linked to innocence. *Schlup*, 513 U.S. at 321. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id.* at 315. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U. S. at 496.

Respondents argue that Banks failed to exhaust his ineffective assistance claims regarding a sleeping juror and an alleged failure to file motions on his behalf. The claim concerning an alleged sleeping juror was raised unsuccessfully at the post-conviction hearing, Document 7-1, Exhibit 8 at 21-22 & Exhibit 9 at 3-5, but not presented in the application for leave to appeal the denial of post-conviction relief. The claim concerning an alleged failure to file motions was never presented on appeal or by way of post-conviction review. Although Banks states generally that his conviction is a miscarriage of justice, Document 12 at 2, nothing in the record suggests that Banks is actually innocent. As both claims are procedurally defaulted,

they will not be examined on the merits here.

**Standard of Review**

Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).[4] Section 2254(d) also requires federal courts to give great deference to a state court's factual findings. *See Lenz v. Washington,* 444 F. 3d 295, 299 (4th Cir. 2006). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively

[4] Although § 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curam*), a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529, U.S. at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A criminal defendant's right to effective assistance of counsel is protected by the Sixth Amendment to the United States Constitution. Constitutionally ineffective assistance of counsel claims are governed by standards established in *Strickland v. Washington,* 466 U.S. 668 (1984).[5] To prevail on a claim of ineffective assistance of counsel, a petitioner must show his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland,* 466 U.S. at 687-88. To demonstrate actual prejudice, a petitioner must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. According to *Strickland,* there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *See id.* at 688-89. A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101(1955)). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697.

At his post-conviction hearing, Banks identified Yvette Banks, Toneice Lightner

---

[5] The Court reaffirmed and applied these standards in an ineffective assistance of counsel context in *Bell v. Cone*, 535 U.S.685 (2002). It explained:

> For respondent to succeed, however, he must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. *See Williams, supra,* at 411, 65 S.Ct. 363. Rather, he must show [the state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.

*Id*. at 698-9.

and Angela Cox as witnesses who should have been called to testify at trial on his behalf. Document 7-1, Exhibit 8 at 15. Yvette Banks and Toneice Lightner testified at the post-conviction hearing. *Id.* at 40-65. The post-conviction court did not find the testimony persuasive and denied relief, finding as follows:

> Petitioner alleges that his trial counsel provided ineffective assistance by failing to call defense witnesses to construct a viable defense. In his Petition, Petitioner does not identify the witnesses or describe their possible testimony….
>
> At trial, Petitioner's counsel stated that there were defense witnesses who were present on the night of the incident at issue. 2/27/07 T. 138:17-19, 140:2225 – 141:1-4, 92: 11-15. Petitioner's counsel had these witnesses ready to testify on February 26, 2007, but the witnesses were not present on February 27, 2007. 2/27/07 T. 92:11-15. Trial counsel advised Petitioner that he could compel these witnesses to attend the trial and testify on February 27, 2007; but, Petitioner indicated that he did not think it was necessary for the witnesses to testify. 2/27/07 T. 92:16-23. Ultimately, Petitioner's trial counsel did not call any witnesses to testify. [citation omitted]. Petitioner elected not to testify at trial. 2/27/07 T. 92: 7-9.
>
> At the time of the shooting, Ms. Ebony James, one victim, told the police that Petitioner had a gun in his hand and shot at her. During the trial Ms. James recanted and testified that Petitioner was not the shooter. [citation omitted]. In addition, Darryl Middleton testified at trial that Petitioner did not own a nine-millimeter handgun. [citation omitted].
>
> At sentencing, Petitioner's trial counsel stated that Petitioner and others knew the true identity of the shooter. 4/16/07 T. 14:25 – 15: 1-5. Petitioner refused to reveal the identity of the "real shooter," however. 4/16/07 T. 15: 4-6.
>
> At the June 26 hearing, Petitioner testified that he told his trial counsel that he had alibi witnesses that he would like to call during the trial. He also testified that he had wanted to testify during his trial. Petitioner further stated that he was inside of his house with Toneice Lightner during the shooting. He also testified that Angela Cox was at his house on the night of the shooting.
>
> Ms. Yvette Banks, Petitioner's sister, testified during the June 26 hearing that she saw Petitioner inside the house at the time of the shooting. During cross-examination, Ms. Banks admitted that she previously told the police that she stayed in the upstairs bedroom during the shooting. She also admitted that she did not previously mention to the police that she saw Petitioner in the house at the time of the shooting.

Toneice Lightner, Petitioner's girlfriend, testified at the June 26 hearing that she was in the upstairs bedroom during the shooting. She further testified that a few minutes before the shooting and before she went upstairs to go to bed, she saw Petitioner asleep in the living room. She stated that she did not see Petitioner during the shooting. Ms. Lightner also stated that Ms. Banks was with her in the upstairs bedroom during the entire event….

Relief on this allegation is denied. Petitioner has failed to establish that trial counsel's actions were deficient.

Though Petitioner testified on June 26 that he wanted the defense witnesses to testify and informed trial counsel of this fact, this Court finds that Petitioner's testimony was not credible. During the February trial, Petitioner informed his trial counsel on the record that he did not want the defense witnesses to testify. [citation omitted] In addition, Petitioner testified that he was inside his house with Toneice Lightner during the shooting, but Ms. Lightner testified that she did not see Petitioner during the shooting.

Petitioner chose not to have the witnesses brought back to court on the second day of trial; and, during sentencing, Petitioner flatly refused to disclose the identity of the "real shooter." [citation omitted].

Moreover, Petitioner's witnesses, Yvette Banks, Toneice Lightner, and Angela Cox, told police that they were in the house, were awakened by gunfire, but saw nothing. Nonetheless, Ms. Banks testified at the June 26 hearing that she saw Petitioner in the house during the shooting. This testimony directly conflicts with her previous statement to the police that she had stayed in the upstairs bedroom during the shooting. This Court does not find the testimony of Ms. Banks credible. Her testimony directly conflicts with her own prior police statement and with the testimony of Toneice Lightner.

Ms. Toneice Lightner testified that she saw Petitioner asleep in the living room minutes before the shooting started. She also testified that she was in the upstairs bedroom with Ms. Banks during the shooting. While her testimony is entirely consistent with her previous statement to the police, her testimony is not helpful to the Petitioner. Ms. Lightner has no knowledge of Petitioner's actions or whereabouts during the actual shooting.

Petitioner testified on June 26 that Angela Cox was present at his house during the shooting. Ms. Cox did not testify during the hearing, however, so it is impossible to determine what she would have stated concerning her whereabouts or her prior statement to the police. Thus, based on the prior statements of these witnesses and their testimony during the hearing, or lack thereof, the trial testimony of these witnesses would have added nothing to Petitioner's defense.

The cases cited by Petitioner are distinguishable from the case at hand. *In*

> *Re Parris W.* involved an attorney who mistakenly subpoenaed alibi witnesses for the wrong trial date and admitted to his error. [citation omitted]. In the case at hand, Petitioner's trial counsel had the relevant witnesses ready to testify on the first day of trial and did not admit to any significant error. In addition, *Bowers v. State* involved at trial counsel's failure to introduce a piece of physical evidence that was potentially exculpatory. *Bowers v. State*, 320 Md. 416, 427-29 (1990). In this case, trial counsel gave Petitioner the opportunity to introduce potentially exculpatory evidence. Petitioner declined to take advantage of this opportunity, however. For these reasons, Petitioner has failed to establish that his trial counsel's actions were "deficient" under the *Strickland* standard.

Document 7-1, Exhibit 9 at 5-9. This court has considered the trial record in light of the deferential standard for evaluating state court rulings. The findings of the state post-conviction court are supported in the record. The decision of that court is objectively reasonable, aligns with Supreme Court precedent, and survives scrutiny under 28 U.S.C. § 2254(d) and (e).

Based on the foregoing analysis, habeas corpus relief is denied. A separate order follows.

Date: November 12, 2009

/s/
Catherine C. Blake
United States District Judge